consciously and directly benefit financially from the manufacture, distribution, sale, and advertisement of Counterfeit Products in connection with the Infringing Websites and Infringing Domain Names, but whose identities, actual names, addresses, and telephone numbers are presently unknown.

## HERMÈS' HISTORY

37. Hermès is a world famous designer and producer of high-fashion clothing, fashion accessories, leather goods such as handbags, purses, wallets, and briefcases, as well as jewelry and watches, and has been in business for approximately one hundred seventy four (174) years.

38. Hermès' origins, including through its predecessors in interest, date from 1837, when the company began producing high quality, elegant harnesses for horses.

39. Hermès' products were first offered for sale in the United States in or around 1924. Accordingly, Hermès' continuous use of the name "Hermès" in the United States has spanned approximately eighty seven (87) years, although many Americans were already familiar with Hermès and its products when Hermès products were first introduced to the United States.

40. Hermès currently operates stores in many states throughout the United States, including several in the State of New York, and in this judicial district.

41. Hermès does business through its website www.Hermes.com, which receives substantial viewership from consumers in the State of New York, and this judicial district.

42. Hermès' two flagship products are its "Kelly" and "Birkin" handbags -- styles famous throughout the world, which are well known as exclusive Hermès designs. Hermès has spent millions of dollars promoting the distinctive design of these handbags.

43. Emile Hermès designed the famous Hermès Kelly bag in the 1930's. The bag became known as the Hermès Kelly bag because Princess Grace Kelly carried the Hermès bag in

famous photographs. The Hermès Kelly bag is undoubtedly one of the most famous bags in the world. The design of the Kelly bag, specifically its unique closure, lock, key, and shape, are strongly associated with Hermès.

44.     Hermès designed the Hermès Birkin bag in the 1980's after Jean-Louis Dumas, the late Chairman of Hermès International, sat next to actress Jane Birkin on an airplane, and she struggled to find diapers in the bag she was then carrying. The bag is now universally known as the Hermès Birkin bag. The design of the Birkin bag, especially its unique closure, lock, key, and shape, are strongly associated with Hermès.

45.     Hermès has also introduced newer products that incorporate the Birkin bag's unique closure, lock, key, and shape, such as the "SHOULDER BIRKIN®."

46.     Many of Hermès' other popular handbags, such as the PLUME®, JYPSIERE®, SO KELLY®, PICOTIN®, BOLIDE®, and LINDY®, are also well known as Hermès designs.

47.     All of Hermès' handbags are handmade by highly skilled craftsmen at Hermès' workshops in France. To maintain the uncompromising quality of Hermès' products, Hermès' craftsmen train for five years under a senior craftsman before being allowed to make an Hermès bag on their own. Any blemish in the bag that arises during its creation results in its destruction. And each handbag is marked on the inside with a code identifying the craftsman who made it.

48.     Only the finest materials available are used to make Hermès' products.

49.     Hermès has expended substantial amounts of money to promote its name and market its products, including through special events at Hermès' shops.

50.     Hermès has expended significant sums to advertise the Hermès Trademarks in the United States. Hermès has engaged in extensive publicity and advertising for its entire product line. Print advertisements have appeared for many years in most major fashion magazines,

general interest magazines, and newspapers having local, nationwide and international circulation. Hermès and related companies have spent millions of dollars to advertise in the United States, including placing advertisements for the Hermès Kelly and Birkin bags.

51.  Hermès also publishes a regular publication entitled *Le Monde D'Hermès*. This promotional publication is circulated throughout the United States and abroad.

52.  The long period of use and promotion of the Hermès name, and the extraordinarily high quality of Hermès' products generally, have caused the media to give considerable attention to Hermès.

53.  The name "Hermès" is synonymous in the mind of the consuming public with elegant fashionable goods of the highest quality and style. In addition, the Hermès' Birkin handbag in particular has received an enormous amount of media attention. An example of such attention includes an episode of the HBO hit television show "Sex and the City." That episode focused its storyline around one character's efforts to acquire an Hermès Birkin bag. The movie "The Royal Tenenbaums" also featured both Hermès Birkin and Kelly bags. Widespread media coverage reported that Martha Stewart carried a genuine Hermès Birkin bag during her trial. Recent media reports covered Jessica Simpson's, and the Kardashian sisters' collections of Hermès Birkin bags.

54.  To protects its valuable intellectual property, Hermès owns the following relevant U.S. Trademark Registrations on word marks (the "Hermès Trademarks"), attached as Exhibit 10:

| Registration Number | Registered Trademark | Registration Date | Relevant International Classes |
|---|---|---|---|
| 368,785 | HERMES | June 27, 1939 | IC 8 and 14 (Jewelry) |
| 369,271 | HERMES | July 18, 1939 | IC 14 (Watches) |
| 369,681 | HERMES | Aug. 1, 1939 | IC 18 (Handbags and purses) |
| 369,944 | HERMES | August 8, 1939 | IC 10, 25 and 26 (Belts, scarves) |

13

| | | | |
|---|---|---|---|
| 2,893,199 | PLUME | Oct. 12, 2004 | IC 18 (Handbags and purses) |
| 2,991,927 | BIRKIN | Sept. 6, 2005 | IC 18 (Handbags and purses) |
| 3,198,963 | HERMES | January 16, 2007 | IC 35 (Computerized online retail store services in the fields of clothing and fashion accessories) |
| 3,480,825 | LINDY | August 5, 2008 | IC 18 (Handbags and purses) |
| 3,730,618 | JYPSIERE | Dec. 29, 2009 | IC 18 (Handbags and purses) |
| 3,834,062 | SO KELLY | August 17, 2010 | IC 18 (Handbags and purses) |
| 3,994,070 | BOLIDE | July 12, 2011 | IC 18 (Handbags and purses) |

55. Additionally, Hermès owns the following relevant U.S. Trademark Registrations, (the "Hermès Designs"), attached as Exhibit 11:

| Registration Number | Registered Trademark | Registration Date | Relevant International Classes |
|---|---|---|---|
| 1,806,107 | [design of handbag] | Nov. 23, 1993 | IC 18 (Handbags and purses) |
| 1,806,108 | [design of handbag with H clasp] | Nov. 23, 1993 | IC 18 (Handbags and purses) |
| 2,436,099 | [Hermès carriage logo with H] | March 20, 2001 | IC 18 (Handbags and purses) |

14

| | | | |
|---|---|---|---|
| 2,866,641 | HERMÈS PARIS | July 27, 2004 | IC 35 (Online retail store services in the fields of clothing, fashion accessories, etc.). |
| 3,198,973 | HERMÈS | Jan. 16, 2007 | IC 35 (Online retail store services in the fields of clothing, fashion accessories, etc.). |
| 3,233,558 | H | Apr. 24, 2007 | IC 6 (wallets); 14 (jewelry); 18 (handbags and purses); 25 (clothing); 26 (belt buckles) |
| 3,233,557 | H | Apr. 24, 2007 | IC 6 (wallets); 14 (jewelry); 18 (handbags and purses); 25 (clothing); 26 (belt buckles) |
| 3,348,789 | (dotted circle design) | Dec. 4, 2007 | IC 6 (Metal locks for handbags and purses, wallets, etc.); IC 18 (Handbags and purses) |

15

| | | | |
|---|---|---|---|
| 3,936,105 | | Mar. 29, 2011 | IC 18 (Handbags and purses) |
| 3,939,358 | | Apr. 5, 2011 | IC 18 (Handbags and purses) |
| 3,980,546 | | June 21, 2011 | IC 14 (Jewelry products, namely necklaces, bracelets, watches, etc.) |

56.   These federal registrations for the Hermès Trademarks and Hermès Designs (collectively, the "Hermès Trademarks and Designs") are in full force and effect and many have become incontestable pursuant to 15 U.S.C. § 1065.

57.   The Hermès Trademarks and Designs have been used by Plaintiffs on, and in connection with, the advertising and sale of Hermès' products, including, but not limited to, ladies handbags and purses; men's briefcases; wallets and passport cases; ladies' and men's belts; scarves; jewelry (including necklaces, bracelets and bangles), and wristwatches, in

16

interstate and intrastate commerce, including commerce in the State of New York, and in this Judicial District.

58. As a result of their widespread use, the Hermès Trademarks and Designs have become symbols of modern luxury and symbols of Hermès. All of the Hermès Trademarks and Designs have acquired secondary meaning and have come to be known as source identifiers for authentic Hermès products.

## THE DEFENDANTS' CONDUCT

59. As described more fully above, the Defendants created and registered a number of Infringing Domain Names.

60. Upon information and belief, the Defendants have also designed and operate a large number of Infringing Websites associated with the Infringing Domain Names that they have intentionally and deliberately designed to resemble authorized Hermès retail outlet stores.

61. Upon information and belief, the Defendants use the Infringing Websites to sell a wide variety of counterfeit "HERMÈS"-branded merchandise. The Infringing Websites sell, and offer to sell at least the following types of goods:

      a. Ladies handbags and purses;
      b. Men's briefcases;
      c. Wallets and passport cases;
      d. Ladies' and men's belts;
      e. Scarves;
      f. Jewelry including necklaces, bracelets and bangles; and
      g. Watches.

62. The Defendants have registered the Infringing Domain Names and are using the Infringing Domain Names in association with the Infringing Websites with the bad-faith intent to profit from the Hermès Trademarks and Designs, namely confusing consumers into believing

that the Defendants' Infringing Websites are retail outlet stores selling authentic Hermès goods, when they are not.

63. Each of the Infringing Domain Names registered and used by the Defendants wholly incorporate or are confusingly similar to one or more of the Hermès Trademarks.

64. Long after Hermès' adoption, use, and federal registration of the Hermès Trademarks and Designs, the Defendants began to sell and offer for sale merchandise bearing counterfeit reproductions of one or more of the Hermès Trademarks and Designs.

65. The Defendants have offered for sale, sold, and advertised Counterfeit Products.

66. Upon information and belief, the Defendants have repeatedly engaged in this conduct over a significant period of time.

67. Upon information and belief, the Defendants have continued to import, distribute, supply, advertise, promote, and sell counterfeit goods bearing the Hermès Trademarks and Designs with knowledge that the merchandise was in fact counterfeit. Through these acts, Defendants have demonstrated that their infringement of the Hermès Trademarks and Designs is willful.

68. Upon information and belief, the Defendants have sold and shipped Counterfeit Products into New York, including into this Judicial District.

## FIRST CLAIM FOR RELIEF

(Against All Defendants)

### Federal Trademark Counterfeiting In Violation of Sections 32(1)(a) and (b) of the Lanham Act (15 U.S.C. § 1114)

69. Hermès hereby repeats each and every allegation set forth in paragraphs 1 to 68 above as if fully set forth herein.

70. Sections 32(1)(a) and (b) of the Lanham Act, 15 U.S.C. § 1114(1)(a) and (b), provide in relevant part that any person who shall, without the consent of the registrant –

(a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive;

(b) reproduce, counterfeit, copy, or colorably imitate a registered mark and apply such reproduction, counterfeit, copy, or colorable imitation to labels, signs, prints, packages, wrappers, receptacles or advertisements intended to be used in commerce upon or in connection with the sale, offering for sale, distribution, or advertising of goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive…

shall be liable in a civil action by the registrant for the remedies hereinafter provided.

71. Defendants have willfully used numerous designations that are counterfeits of the registered Hermès Trademarks and Designs on goods for which Plaintiff holds federal trademark registrations.

72. Additionally, without the consent of Hermès, Defendants have applied one or more counterfeit Hermès Trademarks onto packaging materials, sales receipts, and other printed materials in connection with the sale, offering for sale, and distribution of goods for their own personal financial gain.

73. Hermès has not authorized Defendants' use of any of the Hermès Trademarks or Designs to advertise, offer for sale, sell, and distribute Defendants' counterfeit products.

74. Defendants' unauthorized use of the Hermès Trademarks and Designs on or in connection with the advertising and sale of goods constitutes Defendants' use of Plaintiff's registered marks in commerce.

75. Defendants' unauthorized use of the Hermès Trademarks and Designs is likely to cause confusion, mistake or deceive; cause the public to believe that Defendants' products are

19

authorized, sponsored, or approved by Hermès when they are not; and result in Defendants unfairly and illegally benefitting from Hermès' goodwill.

76. Accordingly, Defendants have engaged in trademark counterfeiting in violation of Sections 32(1)(a) and (b) of the Lanham Act, 15 U.S.C. § 1114(1)(a) and (b), and are liable to Hermès for all damages related thereto, including but not limited to actual damages, infringing profits, and/or statutory damages, as well as attorney's fees.

77. Defendants' acts have caused, and will continue to cause, irreparable injury to Hermès.

78. Hermès has no adequate remedy at law and is thus entitled to damages in an amount yet to be determined.

79. Defendants' egregious conduct in repeatedly selling counterfeit merchandise bearing the unauthorized Hermès Trademarks and Designs is willful and intentional, and thus this constitutes an exceptional case.

## SECOND CLAIM FOR RELIEF

### (Against All Defendants)

### Federal Trademark Infringement In Violation of Section 32 of the Lanham Act
### (15 U.S.C. § 1114)

80. Hermès hereby repeats each and every allegation set forth in paragraphs 1 to 79 above as if fully set forth herein.

81. Section 32(1)(a) of the Lanham Act, 15 U.S.C. § 1114(1)(a), prohibits any person from using in commerce, without the consent of the registrant:

> any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive . . .

20

82. The Hermès Trademarks and Designs are federally registered. These trademarks are distinctive and are associated in the public mind with Hermès.

83. Additionally, based on Hermès' extensive advertising, sales, and the popularity of their respective products, the Hermès Trademarks and Designs have acquired secondary meaning so that the public associates these trademarks exclusively with Hermès.

84. Defendants have used counterfeit reproductions of one or more of the Hermès Trademarks and Designs in connection with the advertising, sale, offering for sale, and distribution of goods for their own financial gain.

85. Hermès has not authorized Defendants' use of any of the Hermès Trademarks or Designs.

86. Defendants' unauthorized use of the Hermès Trademarks and Designs on or in connection with the advertising and sale of goods constitutes Defendants' use of Plaintiff's registered marks in commerce.

87. Defendants' unauthorized use of the Hermès Trademarks and Designs is likely to cause confusion, mistake, or deceive; cause the public to believe that Defendants' products emanate or originate from Hermès when they do not, or that Hermès has authorized, sponsored, approved, or otherwise associated itself with Defendants or their counterfeit products bearing the Hermès Trademarks and Designs.

88. Defendants' unauthorized use of the Hermès Trademarks and Designs has resulted in Defendants unfairly and illegally benefitting from Hermès' goodwill. This has caused substantial and irreparable injury to the public, Hermès, the Hermès Trademarks and Designs, and the substantial goodwill represented thereby.

89. Accordingly, Defendants have engaged in trademark infringement in violation of 15 U.S.C. § 1114.

90. Defendants' acts have caused, and will continue to cause, irreparable injury to Hermès.

91. Hermès has no adequate remedy at law and is thus entitled to damages in an amount yet to be determined.

92. Defendants' egregious conduct in repeatedly selling infringing merchandise bearing the unauthorized Hermès Trademarks and Designs is willful and intentional, and thus this constitutes an exceptional case.

## THIRD CLAIM FOR RELIEF

### (Against All Defendants)

### Cybersquatting Under the Anticybersquatting Consumer Protection Act (15 U.S.C. § 1125(d)(1))

93. Hermès hereby repeats each and every allegation set forth in paragraphs 1 to 92 above as if fully set forth herein.

94. 15 U.S.C. § 1125(d)(1)(A) provides that:

A person shall be liable in a civil action by the owner of a mark, including a personal name which is protected as a mark under this section, if, without regard to the goods or services of the parties, that person—

(i) has a bad faith intent to profit from that mark, including a personal name which is protected as a mark under this section; and

(ii) registers, traffics in, or uses a domain name that—

(I) in the case of a mark that is distinctive at the time of registration of the domain name, is identical or confusingly similar to that mark;

(II) in the case of a famous mark that is famous at the time of registration of the domain name, is identical or confusingly similar to or dilutive of that mark…

95.     The domain names that Defendants have registered are identical to or confusingly similar to one or more of the Hermès Trademarks, which were distinctive and/or famous at the time that the Defendants registered each of these domain names.

96.     The Defendants registered and have used their domain names with bad-faith intent to profit from the Hermès Trademarks.

97.     Defendants' activities as alleged herein violate the federal Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d)(1).

98.     The Defendants had no bona fide non commercial or fair use of the Hermès Trademarks.

99.     The Defendants intended to divert consumers away from Hermès to a site accessible under Infringing Domain Names that could harm the goodwill represented by the Hermès Trademarks for commercial gain, and with the intent to dilute the Hermès Trademarks, by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the Infringing Domain Names and Infringing Websites.

100.    Defendants' acts have caused and will continue to cause irreparable injury to Hermès. Hermès has no adequate remedy at law and is thus damaged in an amount yet to be determined.

## FOURTH CLAIM FOR RELIEF

(Against All Defendants)

**Trade Dress Infringement and False Designation of Origin
In Violation of Section 43(a) of the Lanham Act
(15 U.S.C. § 1125(a))**

101.    Hermès hereby repeats each and every allegation set forth in paragraphs 1 to 100 above as if fully set forth herein.

102. Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) provides, in relevant part, that:

> Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—(1)(a) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person . . . shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

103. By making unauthorized use, in interstate commerce, of the Hermès Trademarks and Designs, the Defendants have used a "false designation of origin" that is likely to cause confusion, mistake or deception as to the affiliation or connection of the Defendants with Hermès and as to the origin, sponsorship, association or approval of the Defendants' services and goods by Hermès, in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

104. The Defendants' acts constitute the use in commerce of false designations of origin and false and/or misleading descriptions or representations, tending to falsely or misleadingly describe and/or represent the Defendants' products as those of Hermès, in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

105. The Defendants' wrongful acts will continue unless and until enjoined by this Court.

106. The Defendants' acts have caused and will continue to cause irreparable injury to Hermès. Hermès has no adequate remedy at law and is thus damaged in an amount yet to be determined.

107. The Defendants' egregious conduct in selling infringing merchandise is willful and intentional.

## FIFTH CLAIM FOR RELIEF

### (Against All Defendants)

### Federal Trademark Dilution In Violation of Section 43(c) of the Lanham Act
### (15 U.S.C. § 1125(c))

108. Hermès hereby repeats each and every allegation set forth in paragraphs 1 to 107 above as if fully set forth herein.

109. Section 43(c)(1) of the Lanham Act, 15 U.S.C. § 1125(c)(1), provides, in relevant part, that:

> Subject to the principles of equity, the owner of a famous mark that is distinctive, inherently or through acquired distinctiveness, shall be entitled to an injunction against another person who, at any time after the owner's mark has become famous, commences use of a mark or trade name in commerce that is likely to cause dilution by blurring or dilution by tarnishment of the famous mark, regardless of the presence or absence of actual or likely confusion, of competition, or of actual economic injury.

110. Hermès International is the exclusive owner of the Hermès Trademarks and Designs.

111. The Hermès Trademarks and Designs are famous and distinctive within the meaning of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

112. The Hermès Trademarks and Designs are all distinctive marks that have been in use for many years and play a prominent role in Hermès' marketing, advertising, and the popularity of its products across many different media.

113. The Hermès Trademarks and Designs were famous long before the Defendants began using unauthorized reproductions, counterfeits, copies, and colorable imitations of the Hermès Trademarks and Designs on their unauthorized merchandise.

114. The Hermès Trademarks and Designs have gained widespread publicity and public recognition in New York and elsewhere.