**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

_____

| | | |
|---|---|---|
| HERMÈS INTERNATIONAL, and | : | |
| HERMÈS OF PARIS, INC., | : | |
| | : | |
| Plaintiffs, | : | Civil Action |
| | : | |
| v. | : | No.: 12 Civ. 1623 |
| | : | |
| JOHN DOE 1 A/K/A LI HUA A/K/A | : | **JUDGE COTE** |
| YAO DONG; JOHN DOE 2 A/K/A | : | |
| HAO DA TOU A/K/A DA TOU LI | : | **MEMORANDUM OF LAW IN** |
| A/K/A HUWEISHENG | : | **SUPPORT OF PLAINTIFFS' MOTION** |
| A/K/A GOU YI LU; | : | **FOR ENTRY OF DEFAULT** |
| JOHN DOE 3 A/K/A LUOXIAOBO | : | **JUDGMENT AGAINST ALL** |
| A/K/A LIU MIAN A/K/A ZHEN | : | **DEFENDANTS** |
| HONGXING A/K/A LIANGGUILIN | : | |
| A/K/A LUO DA YOU A/K/A GAOHONG; | : | |
| JOHN DOE 4 A/K/A JIU MA; | : | |
| JOHN DOE 5 A/K/A CHEN YIBIN | : | |
| A/K/A LEONA WANGQIANG; | : | |
| JOHN DOE 6 A/K/A IAAI A/K/A | : | |
| JKUOIU; | : | |
| JOHN DOE 7 A/K/A XIN HONG; | : | |
| JOHN DOE 8 A/K/A ZHENG RUISHAN; | : | |
| JOHN DOES 9-100; | : | |
| AND XYZ COMPANIES, | : | |
| | : | |
| Defendants. | : | |

_____

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR ENTRY OF
<u>DEFAULT JUDGMENT AGAINST ALL DEFENDANTS</u>**

Joseph C. Gioconda (JG4716)
Jonathan A. Malki (JM4410)
Kristin Lia (KL7394)
THE GIOCONDA LAW GROUP PLLC
One Penn Plaza, 36th Floor
New York, New York 10119-0002
Telephone: (212) 786-7549
Facsimile: (888) 697-9665
Joseph.Gioconda@GiocondaLaw.com

Bell Plaza, Suite 607
42-40 Bell Boulevard
Bayside, NY 11361
Telephone: (718) 423-3610
Joseph.Gioconda@GiocondaLaw.com

Attorneys for Plaintiffs

*HERMÈS INTERNATIONAL and
HERMÈS OF PARIS, INC.*

## TABLE OF CONTENTS

I.   **INTRODUCTION** ...................................................................................................... 1

II.  **FACTUAL BACKGROUND** ................................................................................... 2

III. **ARGUMENT** ............................................................................................................ 4

   A.   HERMÈS IS ENTITLED TO A DEFAULT JUDGMENT AGAINST ALL
DEFENDANTS ........................................................................................................... 4

     1.   *The Defendants' Failure to Appear Justifies the Entry of a Default Judgment* ............... 4

     2.   *The Defendants' Willful Violation of the Plaintiffs' Rights in the Hermès Trademarks
and Designs Justifies Imposing Enhanced Statutory Damages* ............................................. 5

     3.   *The Defendants' Willful Infringement of the Hermès Trademarks and Designs Merits an
Assessment of Statutory Damages and Attorneys' Fees in an Amount Not Less than One
Hundred Million Dollars ($100,000,000)* ............................................................................. 7

     4.   *The Plaintiffs are Further Entitled to Permanent Injunctive Relief* ............................. 13

IV.  **CONCLUSION** ...................................................................................................... 15

## TABLE OF AUTHORITIES

Page(s)

Cases

*Brown v. Gabbidon,*
No. 06 Civ. 8148 (HB), 2007 WL 1423788 (S.D.N.Y. May 14, 2007)........................................ 5

*Burberry Limited (UK), et al. v. Burberry-Scarves.com, et al.,*
10 Civ. 9240 (TPG) (S.D.N.Y. May 5, 2011) ........................................................................... 10

*Church & Dwight Co., Inc. v. Kaloti Enterprises of Michigan, L.L.C.,*
697 F.Supp.2d 287 (S.D.N.Y. 2009) ....................................................................................... 12

Coach, Inc. v. O'Brien,
10 Civ. 6071 (JPO) (JLC), 2011 WL 6122265 (S.D.N.Y. Nov. 28, 2011) ........................... 13-14

*eBay Inc. v. MercExchange, LLC,*
547 U.S. 388 (2006)................................................................................................................. 13

*Fitzgerald Pub. Co., Inc. v. Baylor Pub. Co.,*
807 F.2d 1110 (2d Cir. 1986).................................................................................................... 8

*Gucci Am., Inc. v. Duty Free Apparel, Ltd.,*
315 F.Supp.2d 511 (S.D.N.Y. 2004) ......................................................................................... 8

*Gucci Am., Inc. v. MyReplicaHandbag.com,*
No. 07 Civ. 2438 (JGK), 2008 WL 512789 (S.D.N.Y. Feb. 26, 2008) ................................. 8, 11

*Gucci Am., Inc. v. Tyrrell-Miller,*
678 F.Supp.2d 117 (S.D.N.Y. 2008) ....................................................................................... 12

*Guess?, Inc. v. Gold Center Jewelry,*
997 F.Supp. 409 (S.D.N.Y. 1998) ............................................................................................. 6

*Hermès Int'l. v. Lederer de Paris Fifth Avenue, Inc.,*
50 F.Supp.2d 212 (S.D.N.Y. 1999) ........................................................................................... 9

*Hermès Int'l. v. Kiernan,*
No. CV 06-3605 (LDW) (WDW), 2008 WL 4163208 (E.D.N.Y. Aug. 28, 2008) ....................... 5

*KepnerTregoe, Inc. v. Vroom,*
186 F.3d 283 (2d Cir. 1999)....................................................................................................... 5

*Louis Vuitton Malletier & Oakley, Inc. v. Veit,*
211 F.Supp.2d 567 (E.D.Pa. 2002) ........................................................................................ 8-9

*Malletier v. Carducci Leather Fashions, Inc.,*
648 F.Supp.2d 501 (S.D.N.Y. 2009) ...................................................................... 6

*Marks Org., Inc. v. Joles,*
784 F.Supp.2d 322 (S.D.N.Y. 2011) .................................................................... 13

*New York City Triathlon, LLC v. NYC Triathlon Club, Inc.,*
704 F.Supp.2d 305 (S.D.N.Y. 2011) ................................................................ 13-14

*Nike, Inc. v. Top Brand Co.,*
No. 00 Civ. 8179 (KMW) (RLE), 2006 WL 2946472 (S.D.N.Y. Feb. 27, 2006) .................. 8, 11

*Nike, Inc. v. Top Brand Co.,*
No. 00 Civ. 8179 (KMW) (RLE), 2006 WL 2884437 (S.D.N.Y. Oct. 6, 2006) .......................... 8

*Philip Morris USA Inc. v. A&V Minimarket Inc.,*
592 F.Supp.2d 669 (S.D.N.Y. 2009) .................................................................... 10

*Rolex Watch U.S.A., Inc. v. Jones,*
No. 99 Civ. 2359 (DLC) (FM), 2002 WL 596354 (S.D.N.Y. Apr. 17, 2002) .......................... 7, 9

*Rolls-Royce PLC v. Rolls-Royce USA, Inc.,*
688 F.Supp.2d 150 (E.D.N.Y. 2010) ..................................................................... 9

*Sara Lee Corp. v. Bags of New York, Inc.,*
36 F.Supp.2d 161 (S.D.N.Y. 1999) .................................................................... 6, 9

*Tiffany (NJ) Inc. v. Luban,*
282 F.Supp.2d 123 (S.D.N.Y. 2003) .................................................................... 6

*Tory Burch LLC, et al. v. Yong Sheng Int'l Trade Co., et al.,*
No. 10 Civ. 9336 (SAB) (S.D.N.Y. May 13, 2011) ...................................................... 10

*True Religion Apparel, Inc. et al. v. Xiaokang Lee et al.,*
No. 11 Civ. 8242 (HB) (S.D.N.Y. March 12, 2012) ..................................................... 10

*Victorinox AG v. U.S. Flash & Technologies LLC,*
No. 09 Civ. 9266 (RJH) (FM), 2010 WL 5691991 (S.D.N.Y. Oct. 21, 2010) .......................... 12

Statutes

15 U.S.C. § 1116(a). ................................................................................. 13
15 U.S.C. § 1116(d)(1)(A). .............................................................................. 1
15 U.S.C. § 1117 ........................................................................................ 4
15 U.S.C. § 1117(a) .................................................................................... 11
15 U.S.C. § 1117(c) ..................................................................................... 5
15 U.S.C. § 1117(c)(1) .................................................................................. 5

15 U.S.C. § 1117(c)(2)..........................................................................................5-6

Other Authorities

S.Rep. No. 177, 104th Cong., 2d Sess. (1995) ............................................... 6

Rules

Fed. R. Civ. P. 12(a)(1)(A), ....................................................................... 1
Fed. R. Civ. P. 54(c) ................................................................................... 4
Fed. R. Civ. P. 55(a) ................................................................................... 4
Fed. R. Civ. P. 55(b)(2) ...................................................................... 1, 4, 12
Local Civil Rule 55.2(b) ............................................................................. 1

I.      **INTRODUCTION**

Plaintiffs Hermès International and Hermès of Paris, Inc. (collectively "Hermès" or the "Plaintiffs") respectfully submit this memorandum of law in support of their motion, pursuant to Federal Rule of Civil Procedure 55(b)(2) and Local Civil Rule 55.2(b), for a default judgment against the Defendants named in *Hermès International, et al. v. John Doe 1, a/k/a Li Hua, et al.,* 12 Civ. 1612 (DLC) (S.D.N.Y.) (filed March 6, 2012). This matter concerns the Plaintiffs' allegation that a large number of individuals and entities are responsible for operating a widespread and dynamic network of Internet websites selling and promoting counterfeit Hermès-branded goods.

The Defendants were served with the Plaintiffs' Complaint and all related papers (the "Complaint") (Docket No. 1) on March 8, 2012. *See* Affidavit of Service (Docket No. 4) (entered March 16, 2012). Pursuant to Fed. R. Civ. P. 12(a)(1)(A), the Defendants' deadline to answer the Complaint was March 29, 2012. As of today, no Defendant has answered, nor has any Defendant requested an extension of time in which to answer, nor has any Defendant made any attempt whatsoever to contact Plaintiffs, Plaintiffs' counsel, or the Court.

In addition, on March 6, 2012, the Court entered a Temporary Restraining Order, Seizure Order, Asset Restraining Order, Domain Name Transfer Order, Order for Expedited Discovery, Order Permitting Service by Electronic Mail, and Order to Show Cause for a Preliminary Injunction (the "TRO") against the Defendants (Docket No. 3). The TRO was served by electronic mail, as ordered by the Court, on the Defendants along with the Complaint and other related papers, as reflected in the affidavit of service noted above. The Court ordered the Defendants to appear to show cause on March 20, 2012 why a Preliminary Injunction should not be entered pursuant to Section 34 of the Lanham Act, 15 U.S.C. § 1116(d)(1)(A). No Defendant so appeared. As a result, on March 21, 2012, the Court converted the TRO into a Preliminary

Injunction (the "Preliminary Injunction") (Docket No. 5). The Preliminary Injunction, which largely continues the restrictions articulated in the TRO, remains in force pending the outcome of this matter.

In light of the Defendants' failure to answer and their continued operation (and, indeed, expansion) of their networks of infringing online stores in willful violation of this Court's orders, the Plaintiffs respectfully ask the Court to enter a default judgment against each of the Defendants.

## II.    FACTUAL BACKGROUND

The factual background of this matter is more fully set forth in the Complaint (the "Compl. at ¶ __.").[1] Collectively, the Defendants are responsible for operating a dynamic, sophisticated, and ever expanding counterfeiting network consisting of a massive number of essentially interchangeable online stores (the "Infringing Websites"). The foundation of the Defendants' counterfeiting networks consists of at least thirty-four (34) domain names incorporating the famous HERMÈS® trademark (the "Infringing Domain Names"), which the Defendants use in conjunction with the Infringing Websites in order to falsely convey to consumers that the online stores are legitimate retailers affiliated with Plaintiffs. Compl. at ¶ 3. The overwhelming majority of these Infringing Domain Names also incorporate the word OUTLET, connoting that the online stores are authorized retailers of authentic overstock inventory. Compl. at ¶ 2. Finally, the Defendants have embedded the Plaintiffs' registered trademarks, designs, and logos (the "Hermès Trademarks and Designs"), as well as its advertising campaign images throughout the Infringing Websites, in a deliberate attempt to deepen the illusion that the online stores are authorized retailers of Hermès products. Compl. at ¶

---

[1] The Plaintiffs hereby incorporate the Complaint by reference.

7. Having designed the Infringing Websites to fraudulently convey an association with Hermès, the Defendants use the Infringing Websites to sell hundreds of shoddy replicas of the Plaintiffs' high quality luxury goods, including handbags and purses, men's bags and briefcases, wallets, card and passport cases, belts, scarves, jewelry (including necklaces, bracelets, and bangles), watches, and cosmetic cases, each of which bear multiple counterfeit reproductions of the Hermès Trademarks and Designs (the "Counterfeit Products"). Compl. at ¶ 5.

Among the preliminary restrictions imposed by this Court, the Defendants were ordered to immediately refrain from "[u]sing any simulation, reproduction, counterfeit, copy, or colorable imitation of the Hermès Trademarks and Designs … for and in connection with any goods or their packaging…." Moreover, the TRO and Preliminary Injunction order the Defendants to cease "[u]sing, linking, transferring, selling, exercising control over, or otherwise owning the Infringing Domain Names, or any other domain name that incorporates, in whole or in part, any of the Hermès Trademarks."

In light of the Defendants' failure to appear in this matter and their total disregard for this Court's orders, Hermès has had to rely exclusively on the compliance of third parties to secure the ordered relief. Indeed, only the Plaintiffs' ability to secure the cooperation of third party Internet registries and registrars has led to the Defendants' Infringing Domain Names and Infringing Websites named in the Complaint being disabled and made inaccessible when queried by an Internet browser, as ordered in the TRO and Preliminary Injunction.

In short, the Defendants have acted with utter disdain for this Court's authority, and only the assistance of third parties has successfully curtailed the Defendants' rampant counterfeiting and infringement.

## III.   ARGUMENT

### A.   HERMÈS IS ENTITLED TO A DEFAULT JUDGMENT AGAINST ALL DEFENDANTS

#### 1.   *The Defendants' Failure to Appear Justifies the Entry of a Default Judgment*

Under FED. R. CIV. P. 55(a) "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." In addition, FED. R. CIV. P. 55(b)(2) provides that the Court may enter a default judgment without any further notice to a defendant that fails to appear.

Moreover, FED. R. CIV. P. 54(c) requires that "[a] default judgment must not differ in kind from, or exceed in amount what is demanded in the pleadings." The prayer for relief in the Complaint includes requests that this Court assess enhanced statutory damages for willful trademark counterfeiting, as well as for costs of suit, including attorneys' fees and costs under 15 U.S.C. § 1117. Compl. Prayer for Relief at ¶¶ 9-10. In addition, the Complaint prays for a permanent injunction enjoining the Defendants from further trafficking in Counterfeit Products and ordering such other relief that the Court deems necessary and appropriate to ameliorate the consumer confusion caused by the Defendants' online counterfeiting network. Compl. Prayer for Relief at ¶¶ 2-7.

As stated above, no Defendant has appeared in this matter, nor has any Defendant raised any objection or defense of any kind, despite the fact that they were properly and verifiably served by electronic mail, per the Court's order. Therefore, given their failure to counter the Plaintiffs' well-pled allegations of willful trademark counterfeiting, infringement, cybersquatting, and unfair competition, the Plaintiffs respectfully request that this Court enter an immediate default judgment against all Defendants and award to the Plaintiffs all the relief

sought in the Complaint. *See Brown v. Gabbidon*, No. 06 Civ. 8148 (HB), 2007 WL 1423788, at

*2 (S.D.N.Y. May 14, 2007) ("[i]n considering a motion for default judgment, the court will treat

the well-pleaded factual allegations of the complaint as true….").

2.    *The Defendants' Willful Violation of the Plaintiffs' Rights in the Hermès Trademarks and Designs Justifies Imposing Enhanced Statutory Damages*

The Lanham Act makes statutory damages available at the plaintiff's election at any time

prior to the entry of final judgment, where a defendant has made "use of a counterfeit mark … in

connection with the sale, offering for sale, or distribution of goods or services…." 15 U.S.C. §

1117(c). While the precise amount of statutory damages imposed is committed to judicial

discretion, the statute prescribes that a minimum of $1,000 and maximum of $200,000 shall be

assessed "per counterfeit mark per type of goods or services sold, offered for sale, or

distributed…." 15 U.S.C. § 1117(c)(1). However, when confronted with incidents of willful

counterfeiting, a court may assess statutory damages of up to $2,000,000 "per counterfeit mark

per type of goods.…" 15 U.S.C. § 1117(c)(2).

The Defendants here have acted with the unmistakable intent to infringe the Hermès

Trademarks and Designs and to both cause and profit from consumer confusion. "Infringement is

willful when 'the defendant had knowledge that [the] conduct represented infringement or

perhaps recklessly disregarded the possibility [that the conduct infringed]." *Hermès Int'l. v.

Kiernan*, No. CV 06-3605 (LDW) (WDW), 2008 WL 4163208, at *3 (E.D.N.Y. Aug. 28, 2008)

(quoting *KepnerTregoe, Inc. v. Vroom*, 186 F.3d 283, 288 (2d Cir. 1999)). There can be no

dispute that the Defendants knew that their creation and operation of their network of Infringing

Websites and sale of Counterfeit Products grossly misappropriated the Hermès Trademarks and

Designs in total violation of the Plaintiffs' rights.

Willfulness may also be inferred by reason of a defendant's default. *See, e.g., Malletier v. Carducci Leather Fashions, Inc.*, 648 F.Supp.2d. 501, 504 (S.D.N.Y. 2009) ("[h]ere, by virtue of its default, [the defendant] admitted Louis Vuitton's allegation that it acted knowingly and intentionally or with reckless disregard or willful blindness to Louis Vuitton's rights."); *see also Tiffany (NJ) Inc. v. Luban*, 282 F.Supp.2d 123, 124 (S.D.N.Y. 2003) ("[b]y virtue of the default, [defendants'] trademark infringement is deemed willful…."). Accordingly, the Court may find that the Defendants acted willfully based on their failure to appear before this Court to even attempt to dispute the Plaintiffs' allegations. Therefore, the Defendants' counterfeiting should be considered willful and subject to the maximum damages prescribed by 15 U.S.C. § 1117(c)(2).

Furthermore, the Defendants' conduct in this matter is of the kind that Congress attempted to address by providing for statutory damages generally, as well as for substantially greater penalties for willful counterfeiting. First, counterfeiters typically frustrate any effort to discern plaintiffs' actual damages by failing to keep adequate business records. *See, e.g., Guess?, Inc. v. Gold Center Jewelry*, 997 F.Supp. 409, 411 (S.D.N.Y. 1998) ([Congress's decision to make statutory damages available as an alternative to actual damages] "'reflected a harsh reality—counterfeiters often do not keep or secrete records of their unlawful activities, thus making proof of the extent of the plaintiff's injury or the counterfeiters' profits impossible as a practical matter.'") (quoting S.Rep. No. 177, 104th Cong., 2d Sess. (1995)).

More salient still is the fact that even if the Defendants did maintain business records sufficient to show their sales of and profits from Counterfeit Products, their failure to appear and to participate in fact discovery deprives the Plaintiffs and this Court of the opportunity to determine the Plaintiffs' actual harm, further justifying the imposition of statutory damages. *See, e.g., Sara Lee Corp. v. Bags of New York, Inc.*, 36 F.Supp.2d 161, 165 (S.D.N.Y. 1999)

("[s]tatutory damages are most appropriate when infringer nondisclosure during fact finding leaves damages uncertain.").

Enhanced statutory damages for willfulness are meant not only to compensate trademark owners for their actual damages but also to deter deliberate counterfeiting by severely punishing infringers. *See id.* at 167 ([statutory damages for infringement in trademark as well as copyright] "may be punitive as necessary to deter the defendants, to deter others, and to redress wrongful litigation conduct."); *see also Rolex Watch U.S.A., Inc. v. Jones*, No. 99 Civ. 2359 (DLC) (FM), 2002 WL 596354, at *5 (S.D.N.Y. Apr. 17, 2002) (where "a defendant is shown to have acted willfully … statutory damages should incorporate not only a compensatory, but also a punitive component to discourage further wrongdoing by the defendants and others."). Therefore, the global scope and massive scale of the Defendants' counterfeiting network amply justify the imposition of damages that harshly punish their brazenly unlawful conduct.

Accordingly, because they knowingly infringed the Plaintiffs' federally registered marks, declined to answer the Complaint or otherwise appear before the Court, have given no indication that they will provide records accounting for the unlawful profits gleaned from their counterfeiting operations through fact discovery, and due to the propriety of imposing severely punitive measures, the Defendants' conduct should be subject to enhanced statutory damages for willful counterfeiting.

3. *The Defendants' Willful Infringement of the Hermès Trademarks and Designs Merit an Assessment of Statutory Damages and Attorneys' Fees in a Combined Amount Not Less than One Hundred Million Dollars ($100,000,000)*

The Plaintiffs' respectfully request that this Court assess statutory damages of not less than one hundred million dollars ($100,000,000.00) against the Defendants in this matter. This assessment is justified not only by the Defendants' willfulness, but also the massive scale of their

counterfeiting scheme, which harms both Hermès and the public, and their utter disregard for this Court's authority. *See Nike, Inc. v. Top Brand Co.*, No. 00 Civ. 8179 (KMW) (RLE), 2006 WL 2946472, at *2 (S.D.N.Y. Feb. 27, 2006), *adopted in full by* 2006 WL 2884437, at *2 (S.D.N.Y. Oct. 6, 2006) ("the size of the defendants' infringing operations … the willfulness of their conduct, and their behavior in this litigation all weigh towards a grant of the maximum in statutory damages.").

A district court is "only limited by what [it] considers just" in meting out statutory damages against defendants that engage in counterfeiting. *Gucci Am., Inc. v. Duty Free Apparel, Ltd.,* 315 F.Supp.2d 511, 520 (S.D.N.Y. 2004) (quoting *Louis Vuitton Malletier & Oakley, Inc. v. Veit,* 211 F.Supp.2d 567, 583 (E.D.Pa. 2002)). However, several courts have drawn an analogy from cases interpreting similar provisions of the U.S. Copyright Act to inform their calculations of statutory damages for trademark counterfeiting:

> [C]ourts look to factors such as: (1) 'the expenses saved and the profits reaped;' (2) 'the revenues lost by the plaintiff;' (3) 'the value of the copyright;' (4) 'the deterrent effect on others besides the defendant;' (5) 'whether the defendant's conduct was innocent or willful;' (6) 'whether a defendant has cooperated in providing particular records from which to assess the value of the infringing material produced;' and (7) 'the potential for discouraging the defendant.'

*Gucci Am., Inc. v. MyReplicaHandbag.com*, No. 07 Civ. 2438 (JGK), 2008 WL 512789, at *2 (S.D.N.Y. Feb. 26, 2008) (*quoting Fitzgerald Pub. Co., Inc. v. Baylor Pub. Co.,* 807 F.2d 1110, 1117 (2d Cir. 1986).

The enumerated factors cut decisively against the Defendants in this matter. As established, the Defendants' conduct here was unmistakably willful. In addition, the Plaintiff has shown that the Hermès Trademarks and Designs, in use for nearly one hundred seventy-five years, have built up enormous goodwill and are extremely valuable in the market for luxury goods. *See* Compl. at ¶¶ 37-53; *see also Hermès Int'l. v. Lederer de Paris Fifth Avenue, Inc.*, 50

F.Supp.2d 212, 215 (S.D.N.Y. 1999) (*rev'd on other grounds*) (describing Hermès's multimillion dollar campaign to promote its goods in leading consumer magazines, including *Elle, Vogue, Forbes,* and the *New Yorker*).

As discussed, although the Defendants' failure to appear prevents the Plaintiffs and the Court from discovering the Defendants' profits and expenses, the Defendants clearly benefit from the fact that consumers anywhere in the world can access the Infringing Websites, leading to increased sales. *See Louis Vuitton Malletier & Oakley Inc.*, 211 F.Supp.2d at 584 ("While the record contains no evidence of the actual scope of the defendants' sales … given the scope of the Internet supermarket, *such sales offerings are presumptively quite high*….") (emphasis added); *see also, Rolex Watch U.S.A., Inc.*, 2002 WL 596354, at *5 (recommending increased statutory damages in part because of "the virtually limitless number of customers available" to the defendant over the Internet). While it is similarly impossible to precisely calculate the Plaintiffs' actual losses here, the unlawful sale of Counterfeit Products has undoubtedly harmed its revenues, as the Defendants have profited from consumer confusion that they themselves created. *See, e.g., Rolls-Royce PLC v. Rolls-Royce USA, Inc.*, 688 F.Supp.2d 150, 158 (E.D.N.Y. 2010) (remarking that plaintiffs incur greater harm where counterfeiters traffic in "primarily the same type of goods or products" as their genuine offerings).

In any event, the Defendants should not benefit from their failure to participate in this litigation, and the damages assessed against them should reflect the fact that they neglected to introduce proof mitigating the relief to which the Plaintiffs are entitled. *See Sara Lee Corp.*, 36 F.Supp.2d at 169 ("[t]he Second Circuit instructs us that in determining infringement damages, courts are to resolve against the defendants any factual uncertainties … when the defendants left the uncertainty by not responding to the evidence of counterfeit sales with evidence of their

own."); *see also Philip Morris USA Inc. v. A&V Minimarket Inc.*, 592 F.Supp.2d 669, 674 (S.D.N.Y. 2009) ("the defendants' failure to respond … has left the Court with no information as to any of the factors relating to the defendants' circumstances. Thus the Court draws every reasonable inference on these points against the defendants.").

Furthermore, the damages Hermès prays for in this matter is wholly in line with the quantum of damages assessed against defendants in default by courts in this District in a number of effectively identical cases involving sprawling online counterfeiting networks. *See, e.g., True Religion Apparel, Inc. et al. v. Xiaokang Lee et al.*, 11 Civ. 8242 (HB) (S.D.N.Y.) (Default Judgment and Permanent Injunction Order, March 12, 2012) (Docket No. 31) (imposing statutory damages of $8,150,000—a figure comprised of damages in the amount of $2,000,000 for each of the plaintiff's three trademarks at issue, and $150,000 for the plaintiff's single copyright at issue—against each of 109 defendants, for a total of $863,900,000 in damages); *Tory Burch LLC, et al. v. Yong Sheng Int'l Trade Co., et al.*, No. 10 Civ. 9336 (SAB) (S.D.N.Y.) (Default Judgment and Permanent Injunction Order, May 13, 2011) (Docket No. 29) (assessing maximum statutory damages of $2,000,000 per each of the plaintiff's two infringed marks against each of the Defendants, for a total of $164,000,000); *Burberry Limited (UK), et al. v. Burberry-Scarves.com, et al.*, 10 Civ. 9240 (TPG) (S.D.N.Y.) (Default Judgment and Permanent Injunction, May 5, 2011) (Docket No. 20) (statutory damages in the amount of $60,000,000); *North Face Apparel Corp. et al. v. Fujian Sharing Import & Export Ltd. Co. et al.*, No. 10 Civ. 1630 (AKH) (S.D.N.Y.) (Default Judgment and Permanent Injunction, Sept. 13, 2010) (Docket No. 29) (awarding statutory damages of $78,000,000).

Taking all the foregoing into account, a calculation of statutory damages totaling at least $100,000,000 is reasonable. As noted above, the Lanham Act permits courts to assess liability of

up to $2,000,000 per counterfeit mark per type of goods sold against willful infringers. Thus, the key inquiry in calculating statutory damages is the manner in which a court defines discrete categories of goods sold. *See, e.g., Gucci Am., Inc.*, 2008 WL 512789, at *4 (salient "legal question" is the definition of "'types of goods' for the purpose of measuring damages within the meaning of 15 U.S.C. § 1117(c)(2)."). In general, goods are divided into distinct "types" for purposes of calculating damages "based on the functional purpose of the product." *See id.* (allocating counterfeit goods into several functional categories, but distinguishing, for example, between "handbags," "wallets," and "handbag and wallet sets"); *see also Nike, Inc.*, 2006 WL 2946472, at *3 (distinguishing between "t-shirts, fleece sweatshirts, and polo shirts").

An examination of even just the few screenshots of the Infringing Websites that the Plaintiffs attached to the complaints reveals that collectively the ***Defendants sold and offered for sale at least nine (9) distinct types of Counterfeit Products, each bearing multiple infringing duplications of the twenty-two registered marks comprising the Hermès Trademarks and Designs***, including: women's handbags and purses, men's bags and briefcases, wallets, card and passport cases, belts, scarves, jewelry, watches, and cosmetic cases. *See* Compl., ¶¶ 54-55; Exh. 2-11. While their refusal to participate in this litigation prevents an exact calculation of the Defendants' liability under this rubric, even a conservative estimate of the various types of goods sold and the number of Hermès Trademarks and Designs infringed would result in damages far in excess of the amount that Plaintiffs have requested.

Finally, 15 U.S.C. § 1117(a) permits courts to award plaintiffs their reasonable attorneys' fees and costs incurred in "exceptional cases." Several courts have held that cases of willful counterfeiting are "exceptional" within the meaning of the Lanham Act. *See, e.g., Church & Dwight Co., Inc. v. Kaloti Enterprises of Michigan, L.L.C.*, 697 F.Supp.2d 287, 293 (S.D.N.Y.

2009) ("most courts have found both [attorneys' fees and statutory damages] appropriate in the 'exceptional case' of willful infringement."). Rather than request an additional award of fees, however, the Plaintiffs respectfully request that their reasonable attorneys' fees and costs be considered in the Court's calculation of statutory damages. *See, e.g., Victorinox AG v. U.S. Flash & Technologies LLC*, No. 09 Civ. 9266 (RJH) (FM), 2010 WL 5691991, at *4 (S.D.N.Y. Oct. 21, 2010) ("recommending a lump sum intended to compensate Victorinox not only for its statutory damages but also for its fees and costs is an … appropriate course of action here.").

Thus, in light of the vast array of types of goods sold and large number of Hermès Trademarks and Designs willfully infringed, the Defendants' failure to participate in the litigation, and the public and private interests served by aggressively deterring counterfeiting, the Plaintiffs respectfully request this Court to exercise its authority under FED. R. CIV. P. 55(b)(2) to enter a default judgment against all Defendants, and to assess statutory damages, attorneys' fees, and costs in an amount not less than one hundred million dollars ($100,000,000) against the Defendants. *See Gucci Am., Inc. v. Tyrrell-Miller*, 678 F.Supp.2d 117, 122-23 (S.D.N.Y. 2008) (Sullivan, J.) (assessing statutory damages of $3,000,000 for willful infringement of fifteen marks against a defendant engaged in selling counterfeit handbags on a single website, and holding that in light of the defendant's refusal to appear and to provide records, substantial statutory damages even exceeding the amount sought by the plaintiffs "is appropriate to accomplish the dual goals of compensation and deterrence, and in particular, to emphasize that the trademark laws and court proceedings are not mere incidental costs to doing business in the profitable counterfeit trade.").

4.    *The Plaintiffs are Further Entitled to Permanent Injunctive Relief*

In addition to statutory damages, the Lanham Act permits courts to permanently enjoin

trademark infringers and counterfeiters. *See* 15 U.S.C. § 1116(a). In order to secure a permanent

injunction, a plaintiff in the Second Circuit must establish that:

> [it] has actually succeeded on the merits … and that: (1) plaintiff is likely to suffer
> irreparable injury in the absence of an injunction; (2) remedies at law, such as
> monetary damages, are inadequate to compensate plaintiff for that injury; (3) the
> balance of hardships tips in plaintiff's favor; and (4) the public interest would not
> be disserved by the issuance of a [permanent] injunction. *Coach, Inc. v. O'Brien*,
> 10 Civ. 6071 (JPO) (JLC), 2011 WL 6122265, at *12 (S.D.N.Y. Nov. 28, 2011)
> (citing the standard for injunctive relief articulated in *eBay Inc. v. MercExchange,
> LLC*, 547 U.S. 388, 390 (2006)).

Hermès satisfies every element of this multi-factor analysis. In the first instance, by

virtue of the Defendants' default Hermès has succeeded on the merits of its multiple

infringement claims. *See id.* ("[defendant's] default constitutes an admission of liability as to the

trademark infringement claim….").

The Defendants' sale of Counterfeit Products causes Hermès irreparable harm, by a)

necessarily causing confusion among consumers, and b) undermining its ability to control its

reputation and threatening the good will it has established in the Hermès Trademarks and

Designs. *See, e.g., Marks Org., Inc. v. Joles*, 784 F.Supp.2d 322, 334-35 (S.D.N.Y. 2011)

(confirming that likely consumer confusion "should weigh in favor of finding irreparable injury"

and that irreparable injury results from "loss of good will and [a party's] loss of ability to control

its reputation."). Such harm cannot be precisely calculated or recompensed, and can only be

redressed through a grant of injunctive relief. *See, e.g., New York City Triathlon, LLC v. NYC

Triathlon Club, Inc.*, 704 F.Supp.2d 305, 343 (S.D.N.Y. 2011) ("Irreparable harm exists in a

trademark case when the party seeking the injunction shows that it will lose control over the

reputation of its trademark … because loss of control over one's reputation is neither calculable no precisely compensable.") (internal citations omitted).

In addition, the balance of the hardships tilts entirely in the Plaintiffs' favor, as the Defendants did not (and, in any event, could not) "[identify] any hardships for the Court to consider." *Coach, Inc.*, 2011 WL 6122265, at *12 (internal citations omitted). Finally, enjoining the Defendants would clearly benefit the public interest, as "the public has an interest in not being deceived—in being assured that the mark it associates with a product is not attached to good of unknown origin and quality." *New York City Triathlon, LLC*, 704 F.Supp.2d at 344.

Accordingly, the Plaintiffs respectfully request that this Court enter an injunction permanently enjoining and restraining the Defendants and any persons in active concert or participation with them from manufacturing, distributing, delivering, shipping, importing, exporting, advertising, promoting, offering for sale, or selling any products bearing any of the Hermès Trademarks and Designs, or any derivation or colorable imitation thereof, or any mark or design confusingly similar or likely to dilute or detract therefrom.

In addition, the Plaintiffs further request that this Court order that the Infringing Websites and Infringing Domain Names be permanently transferred to Hermès.

Finally, the Plaintiffs request that this Court order that those third party financial institutions and merchant payment providers (such as PayPal®) who have complied with this Court's orders to sequester any funds held in the Defendants' accounts, transfer all right, title, and interest thereto to Hermès.

## IV.    CONCLUSION

For the all the foregoing reasons, the Plaintiffs respectfully request that this Court grant their motion for a Default Judgment Against All Defendants.


April 13, 2012                                    Respectfully Submitted,


                                                 s/ Joseph C. Gioconda
                                                 _____

                                                 Joseph C. Gioconda (JG4716)
                                                 Jonathan A. Malki (JM4410)
                                                 Kristin Lia (KL7394)
                                                 THE GIOCONDA LAW GROUP PLLC
                                                 One Penn Plaza, 36th Floor
                                                 New York, NY 10119-0002
                                                 Telephone: (212) 786-7549
                                                 Facsimile: (888) 697-9665

                                                 Bell Plaza, Suite 607
                                                 42-40 Bell Boulevard
                                                 Bayside, NY 11361
                                                 Telephone: (718) 423-3610
                                                 Joseph.Gioconda@GiocondaLaw.com

                                                 Attorneys for Plaintiffs

                                                 HERMÈS INTERNATIONAL and
                                                 HERMÈS OF PARIS, INC.